IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 18 2013

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK



| | |
|---|---|
| JOAN ANN GREIG, as Special Administratrix of the ESTATE OF JAMES GREIG, deceased, and on behalf of the wrongful death beneficiaries of JAMES GREIG | PLAINTIFFS |
| vs. | CIVIL ACTION NO. 4:13-CV-28 JLH |
| UNITED STATES OF AMERICA | DEFENDANT |

This case assigned to District Judge __Holmes__
and to Magistrate Judge __Kearney__

**COMPLAINT FOR DAMAGES
UNDER THE FEDERAL TORT CLAIMS ACT**

Plaintiffs, by their attorneys, **THE LAW OFFICES OF DARREN O'QUINN PLLC** and **DODDS, KIDD, & RYAN**, for their Complaint, state:

**I.
JURISDICTION, VENUE, AND CONDITIONS PRECEDENT**

1. This action is brought by **JOAN ANN GREIG,** as the Special Administratrix of the **ESTATE OF JAMES GREIG, deceased,** as appointed by the Pulaski County Circuit Court (9th Division) in Case No PR 2011-1512, on behalf of the **ESTATE OF JAMES GREIG** and on behalf of the wrongful death beneficiaries of **JAMES GREIG. JAMES GREIG** was at all times relevant to this litigation a patient of the John L. McClellan Memorial Veterans Hospital in Little

Rock, Pulaski County, Arkansas. This institution is located in the Eastern District of Arkansas and is operated by Central Arkansas Veterans Healthcare System, a part of the **UNITED STATES** Department of Veteran Affairs.

2. The claims herein are brought against the **UNITED STATES OF AMERICA** pursuant to the Federal Tort Claims Act (*28 U.S.C. § 2671, et. seq.*) and *28 U.S.C. §1346(b)(1)* for money damages for personal injuries that were caused by the negligent and wrongful acts and omissions of employees of the **UNITED STATES** government while acting within the course and scope of their offices and employment, under circumstances where the **UNITED STATES**, if a private person, would be liable to **MR. GREIG** in accordance with the laws of the state of Arkansas as set forth in its common law, the **Arkansas Medical Malpractice Act** (*Ark. Code Ann. §16-114-201 et seq.*), the **Arkansas Survival of Actions Act** (*Ark. Code Ann. § 16-62-101*), the **Arkansas Wrongful Death Act** (*Ark. Code Ann. § 16-62-102*), and other applicable laws for medical and ordinary negligence.

3. Venue is proper *28 U.S.C. § 1391(b)(2)* in that all, or a substantial part, of the acts and omissions forming the basis of these claims occurred in the Eastern District of Arkansas, and arose from the medical and ordinary negligence inflicted upon **MR. GREIG** while he was a patient of the John L. McClellan Memorial Veterans Hospital in Little Rock, Pulaski County, Arkansas.

4. **MR. GREIG** has fully complied with the provisions of *28 U.S.C. § 2675* of the Federal Tort Claims Act. This suit has been timely filed, in that on June

29, 2012, **MR. GREIG** timely served notice of his claims on the Veterans Administration, an agency of the **UNITED STATES** responsible for the care and treatment of patients of the John L. McClellan Memorial Veterans Hospital, and the claims were denied on December 19, 2012.

## II.
## EVENTS FORMING THE BASIS OF THIS CLAIM

5. **MR. GREIG** died of massive intracranial hemorrhaging as a result of anticoagulant poisoning by Central Arkansas Veterans Healthcare System John L. McClellan Memorial Veterans Hospital (VA). Specifically, **MR. GREIG** was on Coumadin (7.5mg MWF and 5mg TTSS) for DVT prophylaxis (since at least 12/9/10). On 7/7/11, he went to the VA and was scheduled for a urologic procedure on 8/9/11. In anticipation of that procedure, **MR. GREIG** was told by VA agents and employees to continue his Coumadin (an anticoagulant), but to add Lovenox (another anticoagulant) to his regimen.

6. On 7/12/11 the VA mailed the Lovenox prescription to **MR. GREIG** and called him to discuss "bridging instructions" on how to take the new Lovenox along with his long-term Coumadin. The instructions, which are 2 pages long, essentially required that **MR. GREIG** undertake a complicated schedule to stop taking his Coumadin on 8/4/11 and to begin to taper up the Lovenox and then reverse this taper after his procedure on 8/9/11.

7. It is documented in the records on 7/12/11 at 1348 that **MR. GREIG** indicated to the VA that he could not understand these lengthy instructions because

his "memory is bad" and to please mail them to him. The instructions were never mailed, but **MR. GREIG** did receive the Lovenox prescription on or about 7/14/11. The label on the Lovenox directed **MR. GREIG** to inject "1 syringe under the skin twice a day or as directed by Med Mgmt (Coumadin) Clinic." These were not the "bridging instructions," but the twice-a-day directions were confusingly similar to them.

8. **MR. GREIG** began taking the Lovenox that day as directed by the label on the prescription—twice a day. His family, concerned about taking both blood thinners (anticoagulants), had **MR. GREIG** call the VA. He was told to continue taking the Coumadin—the VA apparently not understanding the significance of combining the two medications or believing that the Lovenox scheduled to start on 8/4 had not yet been started.

9. After taking 18 doses of the Lovenox injection, on the morning of 7/24/11 **MR. GREIG** predictably developed a headache, nausea and vomiting, and was found unresponsive. He was taken by ambulance to the ER at the University of Arkansas for Medical Sciences. A CT scan showed a massive intracranial hemorrhage (intraventricular hemorrhage-IVH). The doctors put in EVDs (extraventricular drains) and noted this to be "anticoagulant poisoning." A CT scan done about 4 days later showed no improvement, and actually **MR. GREIG** was worse than on admission.

10. **MR. GREIG** died on 8/2/11 of his massive brain hemorrhage from the anticoagulant poisoning.

11. This claim is brought due to the VA's negligent education, dispensing, labeling, poor follow-up, substandard counseling, and overall loose handling of a medication that is known to be an extremely dangerous drug. **MR. GREIG** paid for this negligence with his life.

12. On all occasions complained of herein, **MR. GREIG** was under the care, custody, supervision, and treatment of agents and employees of the **UNITED STATES** acting within the course and scope of their offices and employment and the injuries complained of herein were directly and proximately caused by the acts and omissions of the **UNITED STATES**.

### III.
### CLAIMS FOR RELIEF

**First Claim: Medical Negligence**

13. Plaintiffs incorporate by reference herein and re-allege all of the above allegations.

14. The **UNITED STATES** deviated from the acceptable standard of medical care and did not apply the skill and learning the law required in the following respects:

> a) Failure to safely handle, and provide special safeguards to reduce errors for, known high alert medications (according to the Institute for Safe Medication Practices, http://www.ismp.org/Tools/highAlertMedicationLists.asp, both Coumadin and Lovenox are well-known "High-Alert Medications" that bear a heightened risk of causing

significant patient harm when used in error and causing devastating consequences to patients);

b) Failure to provide the necessary care and services to meet the total needs of **MR. GREIG**;

c) Failure to provide the necessary care and services to **MR. GREIG** to prevent him from suffering anticoagulant poisoning;

d) Failure to provide the necessary education, counseling, and follow-up for **MR. GREIG** to safely take his prescribed medications;

e) Failure to provide the necessary directions to **MR. GREIG** to safely take his prescribed medications;

f) Failure to properly label and dispense Lovenox to **MR. GREIG**;

g) Failure to adequately assess, evaluate, and supervise the staff to ensure that **MR. GREIG** received appropriate care in accordance with professional standards of quality, facility policy and procedure, and the laws, regulations, and rules applicable to the facility;

h) The failure to provide, implement, and assure an adequate, comprehensive, and pre-procedure plan based on the needs and functional capacity of **MR. GREIG** that met his physical, mental, and psychosocial needs;

i) The failure to maintain clinical records on **MR. GREIG** in accordance with accepted professional standards that are complete, accurate, timely, and organized;

j) The failure to adequately and appropriately monitor **MR. GREIG** and recognize significant changes in his condition and properly and timely notify appropriate healthcare personnel regarding those changes;

k) The failure to take reasonable steps to prevent, eliminate, and correct problems in **MR. GREIG'S** care and prescriptions;

l) The failure to listen to and evaluate the questions of **MR. GREIG** when he brought them to the attention of VA personnel;

m) The failure to use the degree of skill and care required of an outpatient clinic, pharmacy, and hospital providing basic and necessary medical services to a veteran with conditions such as **MR. GREIG;**

n) Other failures as set forth in the expert opinion and deposition testimony taken in this action.

15. A reasonably prudent healthcare provider operating under the same or similar conditions, as well as one following the standards of care as set forth in the *Arkansas Medical Malpractice Act* and *AMI 1501*, would not have failed to provide the care listed above and would have foreseen that the failure to provide this care would result in devastating injuries to **MR. GREIG**. Each of the foregoing acts of negligence on the part of the **UNITED STATES** was a proximate cause of **MR. GREIG'S** injuries that were foreseeable to the **UNITED STATES** and it is liable for all damages caused by such acts as provided by *28 U.S.C. § 2674* of the Federal Tort Claims Act and other applicable laws.

## Second Claim: Ordinary Negligence

16. Plaintiffs incorporate by reference herein and re-allege all of the above allegations.

17. The **UNITED STATES** owed a non-delegable duty to **MR. GREIG** to hire, train, and supervise employees in its clinics, pharmacies, and hospitals so that such employees deliver care and services to veterans of the country in a safe and beneficial manner in order to meet their basic medical and healthcare needs.

18. The **UNITED STATES** was under a duty to exercise ordinary care and to render care and services as a reasonably prudent and similarly situated healthcare provider would render, but the **UNITED STATES** breached its duty of care to **MR. GREIG** by failing to meet and abide by the standards set forth herein and this failure amounts to ordinary negligence. Specifically, many of the acts and omissions set forth herein involve basic non-medical, rather than professional, issues such as:

a) Mailing **MR. GREIG** to his bridging instructions;

b) Scheduling follow-up consultations to be sure he understood the bridging instructions;

c) Listening to and following-up on the questions of **MR. GREIG** when he tried seek clarification of his bridging instructions;

d) Other non-medical acts as set forth in the testimony and depositions taken in this matter.

19. A reasonably prudent healthcare provider operating under the same or similar conditions, as well as one following the standards of care as set forth in *AMI 1504* and other applicable laws, would not have failed to provide the ordinary care listed above and would have foreseen that the failure to provide this care would

result in devastating injuries to **MR. GREIG**. Each of the foregoing acts of negligence on the part of the **UNITED STATES** was a proximate cause of **MR. GREIG'S** injuries that were foreseeable to the **UNITED STATES** and it is liable for all damages caused by such acts as provided by *28 U.S.C. § 2674* of the Federal Tort Claims Act and other applicable laws.

## IV.
## WRONGFUL DEATH

20. Plaintiffs incorporate by reference herein and re-allege all of the above allegations.

21. As a direct and proximate result of the previously alleged conduct, the **UNITED STATES** caused the death of **MR. GREIG**.

22. **MR. GREIG** suffered personal injury including excruciating pain and suffering, mental anguish, fright, disfigurement, emotional distress, humiliation, loss of life, and death, all of which caused his family and statutory wrongful death beneficiaries to suffer grief and mental anguish.

## V.
## DAMAGES

23. As a proximate result of the above conduct, plaintiffs are entitled to damages for medical expenses and costs, pain, suffering, mental anguish, grief, scars and disfigurement, disability, trauma, loss of enjoyment of life, loss of quality of life and personal dignity, humiliation, fright, emotional distress, loss of life, funeral and related expenses, death, and other injuries as described herein, in an

amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases (the amount of the claim on the SF-95 Claim Form was $9,000,000 and any award should be for at least this amount).

## VI.
## PRAYER FOR RELIEF

THEREFORE, plaintiffs respectfully request the following relief:

(A)   A judgment against defendant, **UNITED STATES OF AMERICA**, for all general and special compensatory damages caused by the conduct of its agents and employees in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases and as proven at trial (the amount of the claim on the SF-95 Claim Form was $9,000,000 and any award should be for at least this amount);

(B)   All costs and attorney fees expended herein;

(C)   All other relief to which they are entitled or that the Court deems just and proper.

Respectfully submitted,

_/s/ M. Darren O'Quinn_

M. Darren O'Quinn, AR Bar #87-125
**LAW OFFICES OF DARREN O'QUINN PLLC**
Plaza West Building
415 N. McKinley, Suite 1000
Little Rock, AR 72205
(501) 975-2442 telephone
(501) 975-2443 facsimile
Darren@DarrenOQuinn.com email

And

Lucas Rowan, AR Bar #08-191
**Dodds, Kidd & Ryan**
313 West. Second Street
Little Rock Arkansas, 72201
Phone:  501-375-9901
Fax:    501-376-0387
LRowan@DKRFirm.com email

**Attorney for Plaintiffs**